HONUS WAGNER COMPANY,

      Plaintiff,

v.

LUMINARY GROUP LLC and
LESLIE BLAIR ROBERTS

      Defendants.

_____/

## ORDER ON MOTIONS TO DISMISS, OR IN ALTERNATIVE CHANGE VENUE; MOTION TO STRIKE; MOTION TO TAKE JUDICIAL NOTICE; MOTION FOR EXTENSION OF TIME; AND MOTION TO AMEND

**THIS CAUSE** is before the Court upon six motions: Motion to Dismiss or in the Alternative Transfer Venue of Plaintiff's First Amended Complaint, ECF No. [34], filed by Defendant Luminary Group LLC ("Luminary"); Motion to Dismiss or, in the Alternative, to Transfer Venue, ECF No. [47], filed by Defendant Leslie Blair Roberts ("L. Roberts," together with Luminary, "Defendants"); Defendant Leslie Blair Roberts' Motion Requesting the Court to Take Judicial Notice of Public Records, ECF No. [48]; and Defendants Luminary Group, LLC and Leslie Blair Roberts' Motion to Strike the Affidavit of Raymond M. Roberts (DE 50), the Supplemental Affidavit of Raymond M. Roberts (DE 55), and Plaintiff's Notice of Filing (DE 56), ECF No. [58] (collectively, the "Motions"). On December 12, 2017 Plaintiff filed an opposed Motion for Extension of Time to Amend Pleadings and or [sic] Add Parties and Incorporated Memorandum of Law with Request for Expedited Briefing Schedule or Immediate Ruling, ECF No. [67]. Finally, on December 19, 2017, Plaintiff filed a motion styled as

"Plaintiff's Motion for Leave to File Second Amended Complaint to Add an Additional Count, Count XI for Declaratory Judgment, and to Clarify the First Amended Complaint to Reflect the Background History of Honus Wagner Company as per the Affidavits of Raymond M. Roberts ECF Nos. [50 and 55] Filed After the First Amended Complaint." ECF No. [68]. The Court has carefully reviewed the Motions, all opposing and supporting materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion to Strike is granted in part and denied in part, the Motions to Dismiss are granted based on lack of personal jurisdiction, and the remaining motions are denied as moot.

## I.   PROCEDURAL BACKGROUND

Plaintiff Honus Wagner Company ("Plaintiff") filed its Amended Complaint, ECF No. [20], on September 17, 2017. On October 4, 2017, Luminary filed its Motion to Dismiss or in the Alternative Transfer Venue of Plaintiff's First Amended Complaint, ECF No. [34]. On October 18, 2017, L. Roberts filed her Motion to Dismiss or, in the Alternative, to Transfer Venue, ECF No. [47] (together, with ECF No. [34], the "Motions to Dismiss"). Plaintiff filed Oppositions to both Motions to Dismiss, ECF Nos. [42] and [51] ("Oppositions"), and Luminary and L. Roberts replied, ECF Nos. [49] and [62]. On October 24, 2017, the day after Luminary filed its reply brief, Plaintiff filed an affidavit which purported to relate to Luminary's Motion to Dismiss styled "Affidavit of Raymond M. Roberts, Attorney at Law, Opining That Plaintiff Honus Wagner Company, Domesticated in Florida in 2013, Is a Successor in Interest Under the Decree, ECF No. 20-1," to which Plaintiff attached twelve exhibits. *See* ECF No. [50] ("October 24, 2017 R. Roberts Affidavit").[1] In addition, on October 26, 2017, two days after Plaintiff filed its Opposition to Roberts' Motion to Dismiss and prior to L. Roberts' Reply, Plaintiff filed an

---

[1] To avoid confusion between Defendant Leslie Blair Roberts and Plaintiff's Affiant Raymond M. Roberts, the Court will refer to each as "L. Roberts" and "R. Roberts, respectively.

additional affidavit in support of its Opposition to L. Roberts' Motion to Dismiss styled "Supplemental Affidavit of Raymond M. Roberts, Attorney at Law, Opining That Plaintiff Honus Wagner Company, Domesticated in Florida in 2013, Is a Successor in Interest Under the Decree, ECF No. 20-1," in which Plaintiff referenced the exhibits attached to ECF No. [50] and attached an additional exhibit. *See* ECF Nos. [55] and [55-1] ("October 26, 2017 R. Roberts Affidavit").

Concurrent with the filing of her motion to dismiss, L. Roberts also filed a Motion Requesting the Court to Take Judicial Notice of Public Records. ECF No. [48] ("Motion to Take Judicial Notice"). In addition, on October 30, 2017, Defendants filed a Motion to Strike the October 24, 2017 R. Roberts Affidavit, the October 26, 2017 R. Roberts Affidavit, and Plaintiff's Notice of Filing (ECF No. [56]). ECF No. [58] ("Motion to Strike"). The day prior, however, Plaintiff filed a Notice of Striking as to ECF No. [56]. ECF No. [57]. Additionally, on October 30, 2017, after Defendants' Motion to Strike was filed, Plaintiff filed a second notice of striking styled "Notice of Striking ECF Nos. [50 and 55] Only With Respect to ECF Nos. [34 and 35]," which ostensibly attempted to clarify that ECF Nos. [50] and [55] are related only to the Motion to Dismiss filed by L. Roberts and not Luminary as Plaintiff originally filed them. ECF No. [61]. Plaintiff subsequently filed an opposition styled "Plaintiff's Response in Opposition to Luminary Group, LLC's and Leslue [sic] Blair Roberts' Motion to Strike the Affidavit of Raymond M. Roberts (DE 50), the Supplemental Affidavit of Raymond M. Roberts (DE 55), and Plaintiff's Notice of Filing (DE 56)," ECF No. [63], which appears to respond to both the Motion to Strike and the Motion to Take Judicial Notice. Defendants replied on November 14, 2017. ECF No [64]. Each of these motions is now ripe for review.

## II.     FACTUAL BACKGROUND

According to the Amended Complaint, Johannes Peter Wagner, also known as Honus Wagner or John H. Wagner ("Wagner"), was a well-known shortstop for the Pittsburgh Pirates who was inducted into the Baseball Hall of Fame in 1936. ECF No. [20] ¶ 2. In 1922, after Wagner had retired from baseball, he formed a sporting goods store called the Honus Wagner Company and opened a store front in Pittsburgh, Pennsylvania. *Id.* ¶ 3. On December 28, 1928, a bankruptcy order was issued in the bankruptcy of the Honus Wagner Sporting Goods Company, a Delaware Corporation. *Id.* ¶ 8. Plaintiff alleges that Wagner subsequently sold the Honus Wagner Company,[2] "along with the rights to the Honus Wagner name, mark, likeness, and identity" to E.L. Braunstein in 1929. *Id.* ¶ 4. 6. While not clear from the Amended Complaint, the sale may have been memorialized in a written agreement (also not before the Court) between John H. Wagner and E.L. Braunstein dated January 21, 1939. *See id.* ¶ 8. By 1933, Wagner sued the Honus Wagner Company for an accounting and damages related to monies Wagner claimed he was owed by the Honus Wagner Company. *Id.* ¶ 5–6. According to the Amended Complaint, Wagner also sought injunctive relief "to stop the use of the Honus Wagner name, likeness, mark, and identity all together" and equitable relief to "give him back the Honus Wagner name, mark, likeness identity, and reputation for his sole use." *Id.* ¶ 6–7.

The lawsuit resulted in a decree "entered . . . by consent of all the parties," and signed by the attorney for John H. Wagner; the attorney for E.L. Braunstein, E.L. Braunstein & Co., Inc., and E.L. Braunstein & Co, Inc. trading as United Sporting Goods Company; the attorney for

---

[2] Plaintiff refers to the original Honus Wagner Company, incorporated in Pennsylvania in 1922 (*id.* ¶ 3), and the Honus Wagner Sporting Goods Company, incorporated in Delaware, interchangeably (*id.* ¶ 8). For the purposes of this motion, the Court need not decide whether these entities are the same, successors in interest, or otherwise related, and will refer to the entities with the terminology used by Plaintiff in the Amended Complaint.

Honus Wagner Company; and the attorney for National Stores Company. ECF No. [21-1] ("Consent Decree"). The Consent Decree states that "all commissions due, or alleged to be due" to Wagner "have been fully paid." *Id.* at 1. The Consent Decree further states:

> That the right to the exclusive use of the name "Honus Wagner" for all commercial and advertising purposes is vested in E.L. Braunstein & Co, Inc., a corporation, E.L. Braunstein and Honus Wagner Company, a corporation, their heirs, executors, administrators, successors and assigns, as appears by Order of Court dated December 28th, 1928, of Watson B. Adair, Esq., Referee in Bankruptcy of the District Court of the Unites States for the Western District of Pennsylvania, made in the Matter of the Honus Wagner Sporting Goods Company, a Delaware Corporation, Bankrupt, at No. 14400 In Bankruptcy, and further acknowledged in the written agreement between Johan H. Wagner and E.L. Braunstein, to the said and same effect, dated January 21st, 1929.

ECF No. [20-1] at 1–2. According to the Amended Complaint, E.L. Braunstein, and later his son-in-law, Murray Shapiro, continued to run the store until March 21, 2011. ECF No. [20] ¶¶ 11–12. The Amended Complaint alleges that after Murray Shapiro died in 2012 "ownership of Honus Wagner Company" passed first to Murray's daughter and then her brother, Allen Shapiro in 2013. *Id.* ¶ 16. By 2014, Allen Shapiro "move[d] the Honus Wagner Company's principal place of business to Florida and has been transitioning the physical store to the World Wide Web." *Id.* The Amended Complaint states that the Honus Wagner Company maintains an online store at www.HonusWagner.biz. *Id.* Plaintiff asserts that based on the foregoing facts, it "owns common law rights in the Honus Wagner name and mark." Plaintiff also alleges that it has registered the mark Honus Wagner with the United States Patent and Trademark Office for use for an "on-line retail store featuring sporting goods" and "for tee shirts, baseballs, and baseball bats." *Id.* ¶ 17. *See also* ECF No. [35] at 3 (Defendant Luminary noting that Plaintiff

obtained two trademarks for the words "Honus Wagner" in April 2016 and June 2016 for an online retail store featuring sporting goods and for tee shirts, baseballs and baseball bats).[3]

Luminary is a licensing agency which serves as "business representative for the estate of Honus Wagner" with its principal place of business in Indiana. ECF No. [20] ¶ 18; ECF No. [35] at 3; *see also* Affidavit of Pete Enfield, ECF No. [35-1] ("Enfield Aff."), ¶ 4. Luminary has registered the URL www.HonusWagner.com. ECF No. [20] ¶ 18; *see also* Enfield Aff. ¶ 12. The website is available to internet users "everywhere in the world." ECF No. [20]¶ 20. Through this website, Luminary offers to "work with companies who wish to use the name or likeness of Honus Wagner in any commercial fashion." *Id.* ¶ 18. The website states "[i]f you are interested in using Honus Wagner in a promotion or product campaign, please contact the Luminary Group" and provides a telephone and fax number. *Id.* The website also includes a fill-in form which allows potential customers to inquire by providing their name, email, subject and message. *Id.* Luminary further states on the same website that "[Honus Wagner's] name, image, words, signature, and voice are the protectable property rights owned by the estate. Any use of the above, without express written consent of the estate is strictly prohibited." *Id.*

Defendant L. Roberts is a resident of South Carolina and the sole heir of the Honus Wagner estate. *Id.* ¶ 26. Plaintiff alleges that Roberts "claimed ownership of the rights to the Honus Wagner name and mark and either granted [Luminary] a license, or assigned, her alleged rights to [Luminary]." *Id.* ¶ 21; *see also* Affidavit of Leslie Blair Roberts, ECF No. [47-3] ("L. Roberts Aff."), ¶ 3. The rights that Luminary offers to license through its website purportedly

---

[3] While Plaintiff does not allege when the trademarks were registered, the Court may take judicial notice of the USPTO's public records which indicate that U.S. Registration Number 4934815 was registered on April 12, 2016 and U.S. Registration Number 4971323 was registered on June 7, 2016. *See also* ECF No. [47] at 3.

derive from Defendant L. Roberts, who claims to be the sole heir of the Honus Wagner estate. *Id.* ¶ 19; *see also* L. Roberts Aff. ¶ 5–7.

Plaintiff alleges that Luminary has entered into an agreement with at least one company, The Topps Company, Inc. ("Topps")[4], to license "Plaintiff's intellectual property rights . . . to advertise, make and sell products in this jurisdiction, as well as throughout the U.S. and the world." *Id.* ¶ 22. This includes sales in at least one store, All Star Sports & Collectibles located in Davie, Florida. *Id.* Plaintiff contends that "Luminary Group owns and controls several other websites directed at this jurisdiction and venue, the U.S. and the world, including but not limited to its company website located at http://luminarygroup.com . . . ." *Id.* ¶ 20. Plaintiff further alleges, without additional detail, that Luminary has licensed others and/or advertised to license others, and/or sold, advertised, and/or in some way shape, form or fashion infringed Plaintiff's Intellectual Property in this jurisdiction, venue, throughout the U.S. and/or the world." *Id.* ¶ 22.

Based on these allegations, Plaintiff alleges that Defendants have infringed on its intellectual property rights and asserts claims under the Lanham Act, as well as state law claims of trademark infringement, unfair competition, and right of publicity under Florida common law, the Florida Deceptive and Unfair Trade Practices Act, and the Indiana State Statutory Right of Publicity. *Id.* ¶ 24.

## III.   MOTION TO STRIKE

Before reaching Defendants' Motions to Dismiss, the Court first addresses Defendants' Motion to Strike, ECF No. [58]. Defendants move to strike the October 24, 2017 R. Roberts Affidavit ECF No. [50]; the October 26, 2017 R. Roberts Affidavit, ECF No [55]; and Plaintiff's Notice of Filing, ECF No. [56]. Rule 12(f) of the Federal Rules of Civil Procedure permits a

---

[4] While not alleged by Plaintiff, according to Defendants, Topps is a Delaware corporation with its principal place of business in New York. ECF No. [47] at 12–13 n.7.

court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," granting courts broad discretion in making this determination. Fed. R. Civ. P. 12(f); *see also Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005); *Williams v. Eckerd Family Youth Alternative*, 908 F. Supp. 908, 910 (M.D. Fla. 1995). Under Rule 12(f), "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010) (internal quotation and citation omitted); *see also Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2015 WL 1566398, at *1 (S.D. Fla. Apr. 8, 2015) (same). Courts have broad discretion in considering a motion to strike under Federal Rule of Civil Procedure 12(f). *Sakolsky v. Rubin Mem'l Chapel, LLC.*, No. 07-80354-CIV, 2007 WL 3197530, at *1 (S.D. Fla. Oct. 26, 2007). However, Rule 12(f) motions to strike are considered drastic, granted sparingly and often disfavored. *Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1327 (S.D. Fla. 2011).

First, Plaintiff has already stricken ECF No. [56] and its attachment, ECF No. [56-1] based on its own Notice of Striking, ECF No. [57]. *See* ECF No. [63] at 2 (representing that "Plaintiff has completely stricken its Notice of Filing, [DE 56], so Defendants' argument regarding same is moot"). The Court therefore denies as moot that portion of Defendants' Motion to Strike related to ECF No. [56].

Second, as to the October 24, 2017 R. Roberts Affidavit and October 26, 2017 R. Roberts Affidavit (together, the "R. Roberts Affidavits"), Defendants argue that both were improperly filed in contravention of the Local Rules, contain additional arguments not asserted in Plaintiff's Oppositions to the Motions to Dismiss, and effectively seek to amend the operative complaint.

*See* ECF No. [58] at 2–3. In a combined response to both the Motion to Strike and Motion to Take Judicial Notice, ECF No. [63], Plaintiff appears to concede that the affidavits contain additional arguments not found in Plaintiff's Opposition to L. Roberts' Motion to Dismiss. Plaintiff urges the Court to deny the Motion to Strike because "to understand the true significance" of documents attached by Defendant L. Roberts to its motions, "the Court must examine the history" of Plaintiff and any related entities and proceedings as contained in the R. Roberts Affidavits. ECF No. [63] ¶ 1. Plaintiff further states in a footnote that "Plaintiff contends, regardless of striking some of its own pleadings, that Plaintiff's Response and the [R. Roberts Affidavits] apply to any and all pleadings affected by these new allegations." *Id.* ¶ 3 n.1. Conflating the standards for admission of expert testimony, a motion to dismiss, and a motion to strike, Plaintiff argues that R. Roberts is qualified as an expert and thus the R. Roberts Affidavits "satisfy the *Twombly/Iqbal* plausibility test, and as a result, the Court should not strike . . . ." *Id.* at 5.[5] On reply, Defendants reiterate that they "take issue with Plaintiff's attempt to amend or improve upon its allegations . . ." through purported expert testimony and/or procedurally improper affidavits. ECF No. [64] at 2, 5.

The content and timing of filing of the R. Roberts Affidavits lend credence to Defendants' arguments in favor of striking the R. Roberts Affidavits. Defendant Luminary's Motion to Dismiss was fully briefed on October 23, 2017. *See* ECF No. [49]. Defendant L. Roberts filed her Motion to Dismiss on October 18, 2017, ECF No. [47], triggering Plaintiff's response date of November 1, 2017. Plaintiff filed an Opposition to L. Roberts' Motion to

---

[5] Plaintiff seems to further admit that the R. Roberts Affidavits seek to amend or supplement the pleadings based on its motion to amend filed December 19, 2017, styled as "Plaintiff's Motion for Leave to File Second Amended Complaint to Add an Additional Count, Count XI for Declaratory Judgment, and to Clarify the First Amended Complaint to Reflect the Background History of Honus Wagner Company as per the Affidavits of Raymond M. Roberts ECF Nos. [50 and 55] Filed After the First Amended Complaint."

Dismiss on October 24, 2017. ECF No. [51], and that same day filed the October 24, 2017 R. Roberts Affidavit. For purposes of the Motion to Strike, the Court assumes, without deciding, that the October 24, 2017 R. Roberts Affidavit was erroneously filed as related to Defendant Luminary's fully-briefed Motion to Dismiss and should have been filed as related to Defendant L. Roberts' Motion to Dismiss, per counsel's representation to the Court. ECF No. [61].

The October 24, 2017 R. Roberts Affidavit was filed contemporaneously with Plaintiff's Opposition to L. Roberts' Motion to Dismiss, ECF No. [51], and thus is not improperly filed *as to Defendant L. Roberts.* Similarly, the October 26, 2017 R. Roberts Affidavit was filed within the allowed time to respond to L. Roberts' Motion to Dismiss and prior to the filing of L. Roberts' reply, and thus is not improperly filed *as to Defendant L. Roberts.*

However, the R. Roberts Affidavits contain additional factual matter not plead in the Amended Complaint and appear to be an attempt by Plaintiff's counsel to amend the operative complaint—apparently as to Defendant L. Roberts only—without seeking leave of Court. This is plainly improper. *Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1228 (11th Cir. 2013) (finding Eleventh Circuit precedent foreclosed defendant's attempt to amend its complaint without seeking leave of court pursuant to Rule 15(a)(2)); *SecurityPoint Media, LLC v. The Adason Grp., LLC*, No. 8:07CV444T24TGW, 2007 WL 2298024, at *3 (M.D. Fla. Aug. 7, 2007) ("It is axiomatic that a plaintiff cannot amend the complaint by arguments made by counsel in opposition to a motion to dismiss." (citation omitted)).

Accordingly, the Court grants Defendants' Motion to Strike the R. Roberts Affidavits as to Defendant L. Roberts, to the extent the allegations contained therein purport to amend the operative complaint. Further, to the extent that facts contained in the R. Roberts Affidavits may be construed as facts propounded to satisfy Plaintiff's burden under the due process prong of

personal jurisdiction analysis, the Court will apply those facts as to Defendant Roberts only. Accordingly, Defendants' Motion to Strike ECF No. [50] and [55] is granted in part and denied in part.

## IV.    MOTION TO DISMISS

### I.    Legal Standard

A complaint in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive such a motion, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant–unlawfully-harmed-me accusation," meaning that a plaintiff is required to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556–56). Thus, while a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). When considering a motion to dismiss, the Court construes the pleadings broadly and views the allegations in the complaint in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016); *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

Under Federal Rule of Civil Procedure 12(b)(2), a party may also move for dismissal based on lack of personal jurisdiction. When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, "[a] plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.' " *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted). If "a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position,' " the plaintiff then bears the burden of producing evidence supporting jurisdiction. *Id.* (quoting *United Techs.*, 556 F.3d at 1274). When the plaintiff's complaint and the defendant's evidence conflict, the court "construe[s] all reasonable inferences in favor of the plaintiff." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)

## A. DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Luminary and Roberts both move to dismiss the Amended Complaint based on, *inter alia*, lack of personal jurisdiction. *See* ECF No. [35] at 9; ECF No [47] at 9. Luminary argues that it lacks any connection to Florida and that Luminary's passive websites that may be viewed in Florida are insufficient to establish personal jurisdiction. ECF No. [35] at 9. In particular, Defendant argues that these websites only "allow[] for the potential of someone to access them in Florida or to submit an email from Florida (which has never happened to Luminary Group's knowledge)." *Id.* at 10 (citing ECF No. [35-1] ¶ 16).

In support of its Motion to Dismiss based on lack of personal jurisdiction, Luminary filed an affidavit of Pete Enfield, the co-owner and president of Luminary Group. ECF No. [35-1].

The Enfield Affidavit avers that Luminary (1) does not make or sell any products; (2) is a limited liability company created and organized in Indiana; (2) has two full time employees who work in Indiana; (3) does not maintain a Florida phone number or address; (4) has no agents in Florida; (5) has no Florida licenses, liens, real property or bank accounts; (6) has no contracts requiring performance in Florida; (7) does not insure any person, property or risk in Florida. *Id.* ¶¶ 3–7.

Luminary Group entered into one contract with NGC, Florida company, on behalf of L. Roberts from 2014 to 2015 which licensed the phrase "J. Honus Wagner" on labels as part of a display holder for baseball-themed coin set. The contract resulted in gross revenue of $362 to Luminary and was no longer active as of 2015. *Id.* ¶¶ 17–19; *see also* Roberts Aff. ¶ 10–11.

L. Roberts, a South Carolina resident, similarly contends that this Court lacks personal jurisdiction over her because she has no minimum contacts with the state of Florida, and that, to the extent Luminary has any contacts with the state of Florida, those contacts may not be attributed to L. Roberts. ECF Nos. [47] at 12; [20] ¶ 26. In her affidavit in support of her motion to dismiss for lack of personal jurisdiction, L. Roberts avers that she is a resident of South Carolina since 2003. L. Roberts Aff. ¶ 3. Prior to 2003, L. Roberts lived in Pennsylvania and has never lived in Florida. *Id.* She is party to an agreement with Luminary Group as the exclusive worldwide licensing representative for Honus Wagner. *Id.* ¶ 8. She has "never entered into an agreement with Honus Wagner Company or any other Florida-based entity to act as a licensing representative in relation to Honus Wagner." *Id.* (footnote omitted).

In her Motion to Dismiss, L. Roberts contends that Plaintiff only alleges one specific allegation against her: "Upon information and belief, Defendant Leslie Blair Roberts claimed ownership of the rights to the Honus Wagner name and mark and either granted Defendant Luminary Group a license, or assigned, her alleged rights to Defendant Luminary Group." ECF

No. [47] at 4 (citing ECF No. [20] ¶ 21). L. Roberts argues that this allegation is not only insufficient to state a claim against her, but also insufficient for the Court to exercise personal jurisdiction over her because it does not satisfy the Florida long arm statute or due process. *Id.* ¶ 10–18.

### B. THE COURT LACKS PERSONAL JURISDICTION OVER PLAINTIFF'S LANHAM ACT CLAIMS

"[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352–53 (finding defendant's "tortious acts on behalf of JEM Marketing caused injury in Florida and thus occurred there because [defendant]'s trademark infringing goods were not only accessible on the website, but were sold to Florida customers through that website. This satisfies § 48.193(1)(a)(2)'s requirements for specific personal jurisdiction over [defendant]"). "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Thus, to determine whether the Court may exercise personal jurisdiction over a defendant, the Court engages in a two part inquiry. First, the Court must determine whether Florida's long-arm statute is satisfied because the defendant committed one of its enumerated acts that subject a party to jurisdiction within Florida. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting Fla. Stat. § 48.193(1)(a)). Second, the Court must determine whether such exercise comports with due process. *Louis Vuitton*, 736 F.3d at 1350. Because the federal statute that forms the basis of jurisdiction here, the Lanham Act, is silent on service of process, under Federal Rule of Civil Procedure 4(e) the Court relies

on the long-arm statute to determine jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996).

Here, Plaintiff alleges personal jurisdiction based on three provisions of the Florida long arm statute:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
> . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> a. The defendant was engaged in solicitation or service activities within this state; or
>
> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(1)(a)(1), (2), & (6). "The reach of Florida's long-arm statute 'is a question of Florida law,' and this Court is required to apply the statute as would the Florida Supreme Court.' " *Louis Vuitton*, 736 F.3d at 1352 (quoting *United Techs.*, 556 F.3d at 1274).

Under § 48.193(1)(a)(2), a defendant commits a tortious act within Florida when that act causes injury in Florida. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (holding that the Eleventh Circuit's "firmly established precedent . . . interprets subsection

[48.193(1)(a)(2) ] to apply to defendants committing tortious acts outside the state that cause injury in Florida"). In the Eleventh Circuit, trademark claims under the Lanham Act as alleged by Plaintiff here are "tortious acts" for the purposes of Florida's long-arm statute. *Louis Vuitton*, 736 F.3d at 1353. Such a tortious act—that is, trademark infringement—occurs when a foreign defendant creates an infringing website out of state which is accessible to residents in Florida and causes harm to a plaintiff in Florida. *Licciardello*, 544 F.3d at 1283–84 (finding "although the website was created in Tennessee, the Florida long-arm statute is satisfied if the alleged trademark infringement on the website caused injury in Florida"). In *Licciardello*, defendant, the singer-plaintiff's former manager, created a website in Tennessee which utilized the plaintiff's protected mark. In reversing the District Court's finding that it lacked personal jurisdiction, the Eleventh Circuit reasoned that the allegedly infringing website caused injury within Florida "by virtue of the website's accessibility in Florida" and Plaintiff's residence in Florida as the owner of the mark. *Licciardello*, 544 F.3d at 1282–83. *See also Louis Vuitton*, 736 F.3d at 1353–54 (applying *Licciardello* and finding that the creation of websites which offered to sell infringing products accessible to and purchased by Florida residents was one of several tortious acts alleged which caused injury in Florida under § 48.193(1)(a)(2)).

While the Eleventh Circuit has so far declined to weigh in on whether trademark injury necessarily occurs where the owner of the mark resides (*Licciardello*, 544 F.3d at 1284), district courts in this state have consistently held that allegations of trademark infringement occurring outside Florida are sufficient for long-arm jurisdiction if the plaintiff suffered harm in Florida. *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000) ("Injury from trademark infringement occurs in the state where the trademark owner resides."); *see also USA Mgmt. Grp., LLC v. Fitness Publications, Inc.*, No. 14-22477-CIV, 2015 WL 11233075, at *2 (S.D. Fla. Mar.

4, 2015) ("The act is considered to take place within the state for purposes of the long-arm statute if the injured party resides in Florida, regardless of where the acts were actually committed."); *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1271 (M.D. Fla. 2015) (finding trademark infringement satisfied § 48.193(1)(a)(2)); *Carmel & Co v. Silverfish, LLC*, No. 1:12-CV-21328-KMM, 2013 WL 1177857, at *4 (S.D. Fla. Mar. 21, 2013)(" [T]he injury from trademark infringement occurs in the state where the trademark owner resides." (internal citations and quotation marks omitted)); *Roca Labs, Inc. v. Boogie Media, LLC*, No. 8:12-CV-2231-T-33EAJ, 2013 WL 2025806, at *6 (M.D. Fla. May 14, 2013) (finding specific jurisdiction under section 48.193(1)(b) because alleged trademark infringement occurred where the holder resides); *Jackson-Bear Grp., Inc. v. Amirjazil*, No. 2:10-CV-332-FTM-29, 2011 WL 1232985, at *6 (M.D. Fla. Mar. 30, 2011) (noting *Liccarrello*'s holding and assuming, without deciding, that the trademark infringement occurred in Florida, but finding assertion of personal jurisdiction violated due process); *KVAR Energy Sav., Inc. v. Tri–State Energy Solutions*, *No.* 6:08–cv–85, 2009 WL 103645, at *11 (M.D. Fla. Jan. 15, 2009) (holding long arm statute satisfied where website displays alleged trademark infringement and is accessible in Florida); *DiMaggio, LLC. v. City, Cty. of San Francisco*, 187 F. Supp. 2d 1359, 1365 (S.D. Fla. 2000) (finding long arm statute satisfied when Defendant City of San Francisco named a park after Joe DiMaggio, allegedly causing injury within the state of Florida where his estate, DiMaggio, LLC, resides, but finding exercise of personal jurisdiction did not comport with due process); *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1366 (S.D. Fla. 1999) (finding specific jurisdiction under section 48.193(1)(b) because alleged trademark infringement occurred where the holder resides). *But see Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1321–22 (M.D. Fla. 2010) (noting that courts in the

Eleventh Circuit have recognized three different tests for under what circumstances a website may constitute an electronic communication into Florida to fulfill the Florida's long arm statute: specific targeting (*Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 347 F. Supp. 2d 1242, 1243 (M.D. Fla. 2004)), accessibility (*Licciardello*, 544 F.3d at 1280), and accessible and actually accessed (*Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295–96 (11th Cir. 2009), *certified question answered*, 39 So. 3d 1201 (Fla. 2010))).

Here, Plaintiff has alleged that it is a Florida corporation—albeit somewhat recently domesticated in the state of Florida—and that it is the holder of the marks on which Defendants have allegedly infringed. ECF No. 20 ¶ 27. The Amended Complaint alleges that in 2014, three years after the last store closed in Pittsburgh, Allen Shapiro "moved Honus Wagner Company's principal place of business to Florida and has been transitioning the physical store to the World Wide Web," which can be found online at www.HonusWagner.biz. *Id.* ¶ 16. Plaintiff alleges that the Honus Wagner Company is "now a Florida Corporation." *See* ECF No. [20] ¶ 3. Honus Wagner Company now maintains its principal place of business in Fort Lauderdale, Florida. *Id.* ¶ 27

The Amended Complaint alleges that Defendants infringed on Plaintiff's trademark, by either unlawfully contracting with a licensing agency to license the marks (in the case of Roberts) or unlawfully licensing, advertising the licensing, and using the Plaintiff's marks (in the case of Luminary). Reading the Eleventh Circuit's direction in *Licciardello* and *Louis Vuitton* with the district court decisions in this state which have found that the trademark injury occurs where the owner of the mark resides, and taking Plaintiff's allegations as true that both Defendant Luminary and Defendant L. Roberts infringed on the marks, the Court finds that

Plaintiff has adequately alleged conduct which satisfies the Florida's long-arm statute under § 48.193(1)(a)(2).

Plaintiff also argues that it satisfies Florida's long-arm statute under § 48.193(1)(a)(1) and (6). *See* ECF No. [51] at 13–18. However, to the extent that Plaintiff's allegations regarding Topps' connection to Florida attempt to establish personal jurisdiction over Luminary and L. Roberts based on § 48.193(1)(a)(1) and (6), the Court finds that argument unpersuasive. The Amended Complaint does not contain sufficient allegations that Defendants were "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state," or "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, . . . [t]he defendant was engaged in solicitation or service activities within this state." *Id.* An alleged licensing agreement between an Indiana company and a Delaware company with its principal place of business in New York in which the licensee contracts to license the use of the mark on products that are sold online or sold to third party stores, including one in Florida, cannot confer jurisdiction in this state over Luminary, more less L. Roberts. *See* ECF Nos. [20] ¶ 22, 26; [42] at 4; [47] at 12-13 n.7; [51] at 4, 13.

Moreover, to the extent Plaintiff has argued in its Oppositions to the Motions to Dismiss that the licensing agreement mentioned in the affidavit of Pete Enfield, president of Luminary, with Florida company NGC active between 2014–2015 (Enfield Aff. ¶¶ 17–20) qualifies as "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state" arising out of the claim sufficient to confer personal jurisdiction over Defendants on Plaintiff's Lanham Act claims under § 48.193(1)(a)(1), that contract pre-dates any registered trademark allegedly owned by the Plaintiff and therefore cannot

satisfy the long arm statute for the purposes of Plaintiff's Lanham Act claims. *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008) ("To bring a trademark infringement claim under the *Lanham Act,* a plaintiff must hold a valid trademark.").

### C. DUE PROCESS

The Court has found that Plaintiff's allegations sounding in violations of the Lanham Act satisfy the Florida long arm statute because they allege that Defendants committed tortious acts outside the state that caused injury in Florida. However, the inquiry does not end there. Now the Court must examine whether the exercise of personal jurisdiction comports with constitutional due process. The Court finds that it does not.

The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless its contacts with the state are such that it has "fair warning" or could have "reasonably anticipated" that it may be subject to suit there. *Licciardello*, 544 F.3d at 1284 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)); *Burger King*, 471 U.S. at 472 (quoting *International Shoe*, 326 U.S. at 316). "This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' [its] activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Licciardello*, 544 F.3d at 1284. (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In addition, the Court must also examine whether the exercise of jurisdiction comports with "fair play and substantial justice." *Licciardello*, 544 F.3d at 1284 (11th Cir. 2008) (quoting *International Shoe*, 326 U.S. at 320).

The Eleventh Circuit has distilled the due process analysis into a three-part test: "(1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts

with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with " 'traditional notions of fair play and substantial justice.' " *Louis Vuitton*, 736 F.3d at 1355 (citation omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.' " *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

### 1. Relatedness

"[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum.' " *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Oldfield*, 558 F.3d at 1222 (some internal quotation marks omitted)). The "inquiry must focus on the direct causal relationship between the defendant, the forum, and the litigation." *Fraser*, 594 F.3d at 850 (internal quotation marks omitted) (quoting *Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872).

Plaintiff alleges five federal claims that sound under the Lanham Act against both Defendants: Count I, Federal Trademark Infringement Under the Lanham Act 15 U.S.C. § 1114; Count II, Unfair Competition Under the Lanham Act, 15 U.S.C.§ 1125(a); Count III, False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a); Count IV, Dilution by Blurring Under the Lanham Act, 15 U.S.C. § 1125(c); and Count V, Cyberpiracy Prevention Under the Lanham Act, 15 U.S.C. § 1125(d)(1). Each is premised on two registrations for the mark "Honus Wagner" in the United States Patent and Trademark Office ("USPTO"). One is an "International Class 35 as an on-line retail store featuring sporting goods (U.S. Registration Number 4934815)"

and the second is an "International Classes 25 & 28 for tee shirts, baseballs and baseball bats (U.S. Registration Number 4971323)." ECF No. [20] ¶ 17. Counts I-V each alleges that Defendants infringed on these registered marks which were registered in April and June 2016. Accordingly, only those contacts which Defendants made with the forum after the registering of the trademarks are relevant to the Court's jurisdictional inquiry.[6] *See Omega Psi Phi Fraternity, Inc. v. Edden*, No. 11-CV-80479, 2012 WL 13018589, at *3 (S.D. Fla. Oct. 30, 2012).

Plaintiff has alleged that Luminary's infringing website is available to anyone with internet access in the world, including Florida residents and offers to enter into infringing licensing agreements with anyone in the world with internet access, including Florida residents. ECF No. [20] ¶¶18–20. Plaintiff argues that Defendant Luminary entered into two licensing agreements, one (included in the Amended Complaint) with Topps that allegedly infringes on Plaintiff's marks by selling goods in the forum (*id.* ¶20) and one with NGC (argued in Plaintiff's Oppositions to the Motions to Dismiss), that allegedly infringes on Plaintiff's marks by entering into a licensing agreement with a Florida company, ECF Nos. [42] at 4 & [51] at 4–5. As to Defendant L. Roberts, Plaintiff alleges that L. Roberts entered into its agreement with Luminary to license for the allegedly infringing advertising and marketing of Plaintiff's marks. ECF No. [20] ¶ 21. Under the broad standard applied for relatedness in this Circuit, these allegations are sufficient to find the Defendants' contacts with Florida are related for purposes of the first prong because the contacts are sufficiently related to the forum state. *Louis Vuitton*, 736 F.3d at 1355–

---

[6] Accordingly, the Court will not analyze contacts with the forum state prior to registration for the purposes of personal jurisdiction over Plaintiff's Lanham Act claims. However, even if the Court were to include the single contract specified by Defendant Luminary in the Enfield Affidavit with a Florida company active from 2014 to 2015 which grossed Luminary $362, the Court is doubtful that the addition of this contact into the due process analysis would change the outcome here for Luminary Group, much less for L. Roberts.

56 (11th Cir. 2013); *Mighty Men*, 102 F. Supp. 3d at 1272; *Commodores Entm't Corp. v. McClary*, No. 6:14–cv–1335–Orl–37GJK, 2015 WL 1242818, at *3 (M.D. Fla. Mar. 18, 2015).

### 2. Purposeful Availment

As this Circuit has observed, in intentional tort cases including trademark infringement, there are two applicable tests to determine whether a defendant has "purposefully availed" himself to the forum state: the "effects test" and the traditional "minimum contacts" test. Under the effects test articulated by the Supreme Court in *Calder v. Jones*, a nonresident defendant's single tortious act can establish purposeful availment even if a defendant does not have any additional contacts with the forum state. *See Licciardello*, 544 F.3d at 1285 (citing *Calder v. Jones*, 465 U.S. 783 (1984). This occurs when the tort was: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (citations omitted). This Circuit has "applied the traditional minimum contacts test for purposeful availment analysis in lieu of, or in addition to, the "effects test" in cases involving trademark-related intentional torts." *Louis Vuitton*, 736 F.3d at 1357. Under that test, a court asks whether the defendant's contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).

The two leading Eleventh Circuit cases analyzing purposeful availment in trademark infringement cases where the claims are based on a website are *Licciardello* and *Louis Vuitton.* In both, the Eleventh Circuit found that the district court could exercise jurisdiction over a foreign defendant, but the facts analyzed in each are distinguishable from those before the Court

here. In *Licciardello*, the Eleventh Circuit applied the *Calder* effects test and found that defendant had committed the intentional tort of "using [plaintiff's] trademarked name and his picture on a website accessible in Florida in a manner to imply [plaintiff]'s endorsement of [defendant] and his products" sufficient to satisfy purposeful availment. The *Licciardello* Court further observed: "The use was not negligent, but intentional. The purpose was to make money from [plaintiff]'s implied endorsement. The unauthorized use of [plaintiff]'s mark, therefore, individually targeted [plaintiff] in order to misappropriate his name and reputation for commercial gain. These allegations satisfy the *Calder* effects test for personal jurisdiction—the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum." *Licciardello*, 544 F.3d at 1287–88 (11th Cir. 2008).

Similarly, in *Louis Vuitton*, the Eleventh Circuit found personal jurisdiction was appropriate. There, the Eleventh Circuit found that "[defendant] purposefully availed himself of the Florida forum in such a way that he could reasonably foresee being haled into a Florida court. [Defendant] purposefully solicited business from Florida residents through the use of at least one fully interactive, commercial website, "pendoza.com." As a result of this Internet advertising, [defendant] received orders from multiple Florida residents to ship goods into Florida. At least one of those orders was from [plaintiff's investigator] for a billfold and [defendant] shipped those goods, including the billfold, into Florida. These collective contacts establish that [defendant] purposefully availed himself of the privileges of doing business in south Florida." *Louis Vuitton*, 736 F.3d at 1357. The Eleventh Circuit, however, cautioned, that its holding in *Louis Vuitton* did not mean that "the mere operation of an interactive website alone gives rise to purposeful availment *anywhere* the website can be accessed," but rather that on the facts before the Court there personal jurisdiction was proper where "in addition to his fully interactive

"pendoza.com" website accessible in Florida, [defendant] had other contacts with Florida—through selling and distributing infringing goods through his website to Florida consumers—*and the cause of action here derives directly from those contacts.*" *Id.* at 1358 (emphasis in original).

After both *Licciardello* and *Louis Vuitton*, the Supreme Court in *Walden v. Fiore* clarified the constrains that constitutional due process places on the exercise of personal jurisdiction. 134 S. Ct. 1115 (2014). In *Walden*, the Supreme Court held that the state of Nevada could not exercise jurisdiction over a defendant from Georgia based merely on the defendant's knowledge that his false affidavit would cause harm to two plaintiffs in Nevada. The *Walden* Court observed that the inquiry regarding "minimum contacts" required to exercise specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.' . . . For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121–22.

Importantly, "the relationship must arise out of contacts that the "defendant himself" creates with the forum State . . [since d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) and citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). The analysis must focus on the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* Accordingly, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* (citing Burger King, 471 U.S. at 478). "Due process requires that a defendant be haled into court

in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King*, 471 U.S. at 475).

With regard to the *Calder* effects test, *Walden* held that "[t]hese same principles apply when intentional torts are involved." *Id.* at 1123. The *Walden* Court , in reviewing *Calder*, noted that jurisdiction was appropriate in *Calder* under the effects test because defendants' intentional conduct connected them directly with California, based on not only the defamatory effects of the news article in the state, but also the California-focused subject matter of the news article which involved California sources and descriptions of activities in California. *Id.*

Reading *Licciardello* and *Louis Vuitton* in conjunction with *Walden*, the Court finds that Plaintiffs have failed to allege that Defendants purposefully availed themselves to the state of Florida under both the traditional minimum contacts test and the *Calder* effects test. Plaintiff argues that Defendants' website which provides Luminary's contact information to anyone with internet access, including those in Florida, and allows users to submit their contact information to Luminary is sufficient to show purposeful availment in the state of Florida. However, Plaintiff has specifically pled itself out of this contention repeatedly stating that Defendants never specifically targeted Florida, but rather the U.S. and the world. ECF No. [20] ¶¶ 18–20; *Louis Vuitton*, 736 F.3d at 1357 (noting mere availably of a website in the district does not confer personal jurisdiction). Defendants aver that they have no knowledge of any Florida resident contacting Luminary based on the information viewable on the website nor filling in the contact information form. ECF No. [35-1] ¶¶ 16–17. Moreover, the Court rejects Plaintiff's argument that Defendants' allegedly infringing contract with Delaware corporation Topps, which is domiciled in New York, does not evince purposeful availment *in Florida*. ECF No. [47] at 12-

13 n.7. Finally, any connections non-party Tops may have to the state of Florida are irrelevant for purposes of analyzing personal jurisdiction over Defendants. *See Walden*, 134 S. Ct. at 1122; *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).

Plaintiff's second argument in favor of personal jurisdiction urges the Court to find that Defendants have purposefully availed themselves to the state of Florida because their infringing conduct caused harm to Plaintiff, which is located the state. ECF No. [20] ¶¶ 24, 59. While these allegations may be sufficient to satisfy Florida's long-arm statute, they fall short of satisfying the requirements of due process. Exercise of due process based on this theory would controvert the Supreme Court's guidance in *Walden* because it would arise not out of Defendants' purposeful contacts with the state but rather would be based on their connection to Plaintiff and Plaintiff's contacts with Florida. *See Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC,* No. 8:17-CV-1584-T-23AEP, 2017 WL 4182405, at *3 (M.D. Fla. Sept. 21, 2017) ("Under *Hanson v. Denckla*, 357 U.S. 235 (1958), *Calder*, and *Walden*, the fact that the plaintiff allegedly suffered an injury in Florida as a consequence of a purportedly "intentional" tort is insufficient to subject the Missouri bar to suit in Florida."). This is even more true for Defendant L. Roberts, whose only alleged connection to Florida is *through* the same contacts of Luminary the Court finds to be insufficient to satisfy due process. *See TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, No. 13-CV-23066, 2014 WL 11899285, at *3–4 (S.D. Fla. July 15, 2014) (finding no purposeful availment as to individual defendant when allegations of contact with the forum state only alleged corporate conduct). Accordingly, the Court finds Defendants have not purposefully availed themselves to Florida and, thus, there exists no personal jurisdiction over the Defendants.

### 3. Fair Play and Substantial Justice

Under the third prong, once Plaintiff has satisfied its burden under the first two prongs, Defendants bear the burden of establishing that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *See Louis Vuitton*, 736 F.3d at 1355. This inquiry requires consideration of the following factors: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the [interstate] judicial system's interest in resolving the dispute." *Mighty Men*, 102 F. Supp. 3d at 1275 (quoting *Licciardello*, 544 F.3d at 1288). "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477–78.

While the Court need not analyze these factors since Plaintiff has failed to fulfill its due process burden, even if it had, the exercise of jurisdiction in this case would violate fair play and substantial justice. On the first factor, Luminary is an Indiana company with two employees with its principal place of business also in Indiana. L. Robert is an individual residing in South Carolina. ECF No. [20] ¶ 25, 26. Both would be heavily burdened by litigating in this form. *See* Enfield Aff. ¶ 21; L Roberts Aff. ¶ 44. On factors two and four, the unique facts before the Court weigh against exercise of jurisdiction. This dispute is between an Indiana company, a South Carolina individual, and a recently domesticated Florida corporation which for over 90 years was located in Pennsylvania. With the exception of Allen Shapiro, is it is not clear than any relevant witnesses or documents are located in the state of Florida. *See* L. Roberts Aff. ¶ 45. Taking the allegations in the Amended Complaint as true, Plaintiff and this dispute have significant contacts with Pennsylvania. Amended Complaint alleges that the Honus Wagner

Company was prosperous and "world renowned famous sporting goods company" in Pittsburg, which at its peak in the 1930s and 1940s maintained ten stores. *See* ECF No. [20] ¶ 11. In 2011, the Allegheny County Council presented the Honus Wagner Company with a proclamation recognizing the company as an "icon of Pittsburg retail business." *Id.* ¶ 15. While Plaintiff is a domesticated Florida corporation, Florida's interest in adjudicating this dispute is minimal, and it may be more appropriately heard in other jurisdictions more connected with the facts of this case. The third factor weighs in favor of exercise of jurisdiction in this district, but on balance, the facts here demonstrate that exercise of jurisdiction by a Florida court offends traditional notions of fair play and substantial justice.

### D. SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Having determined that the Court lacks personal jurisdiction over Plaintiff's federal claims, only Plaintiff's state law claims remain. *See* ECF No. [20]. Plaintiff has alleged federal question subject matter jurisdiction because the Amended Complaint "alleges violations of federal law under the Lanham Act," and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1338 (b) and § 1367. While a district court may exercise jurisdiction over remaining state law claims when it "has dismissed all claims over which it has original jurisdiction," it need not do so. 28 U.S.C. § 1367. In fact, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

Because the Court has dismissed any "substantial and related claim under the copyright, patent, plant variety protection or trademark laws" (28 U.S.C. § 1338(b)) and "all claims over which it has original jurisdiction" (28 U.S.C. § 1367(c)(3)) for lack of personal jurisdiction, the Court declines to exercise personal jurisdiction over Plaintiff's remaining state law claims. 28

U.S.C. § 1367. Accordingly, Counts VI, Trademark Infringement Under Florida Common Law; Count VII, Unfair Competition Under Florida Common Law; Count VIII, Violation of the Florida Deceptive and Unfair Trade Practices Act Fla. Stat. § 501.201 et seq.; Count IX, Indiana State Statutory Right of Publicity; and Count X, Common Law Right of Publicity are dismissed.

## V. REMAINING MOTIONS BEFORE THE COURT

The Court lacks personal jurisdiction over Defendants. Accordingly, the remaining motions before the Court, (1) Defendants Motions to Transfer Venue to the Southern District of Indiana as contained in ECF Nos. [34] and [47]; (2) Defendant L. Roberts' Motion to Take Judicial Notice, ECF No. [48], (3) Plaintiff's Motion for Extension of Time to Amend Pleadings and or [sic] Add Parties and Incorporated Memorandum of Law with Request for Expedited Briefing Schedule or Immediate Ruling, ECF No. [67]; and (4) Plaintiff's Motion for Leave to File Second Amended Complaint to Add an Additional Count, Count XI for Declaratory Judgment, and to Clarify the First Amended Complaint to Reflect the Background History of Honus Wagner Company as per the Affidavits of Raymond M. Roberts ECF Nos. [50 and 55] Filed After the First Amended Complaint, ECF No. [68], are denied as moot.

## VI. CONCLUSION

Accordingly, for the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Luminary's Motion to Dismiss, **ECF No. [34]**, is **GRANTED** based on lack of personal jurisdiction;

2. Defendant L. Roberts' Motion to Dismiss, **ECF No. [47],** is **GRANTED** based on lack of personal jurisdiction;

3. Defendants Motions to Transfer Venue to the Southern District of Indiana as contained in **ECF Nos. [34] and [47]**, are **DENIED AS MOOT.**

4. Plaintiff's Amended Complaint, **ECF No. [20]**, is **DISMISSED WITHOUT PREJUDICE**;

5. Defendant L. Roberts' Motion to Take Judicial Notice, **ECF No. [48]**, is **DENIED AS MOOT**;

6. Defendant L. Roberts' Motion to Dismiss, **ECF No. [47]**, is **GRANTED**;

7. Plaintiff's Motion for Extension of Time to Amend Pleadings and or [sic] Add Parties and Incorporated Memorandum of Law with Request for Expedited Briefing Schedule or Immediate Ruling, **ECF No. [67]**, is **DENIED AS MOOT**;

8. Plaintiff's Motion for Leave to File Second Amended Complaint to Add an Additional Count, Count XI for Declaratory Judgment, and to Clarify the First Amended Complaint to Reflect the Background History of Honus Wagner Company as per the Affidavits of Raymond M. Roberts ECF Nos. [50 and 55] Filed After the First Amended Complaint, **ECF No. [68]**, is **DENIED AS MOOT**.

9. All deadlines are terminated and all pending motions are denied as moot.

10. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of December, 2017.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record